ALAN S. LEVIN, MD, JD
Nevada Bar No. 7062
ALAN S. LEVIN, P.C.
Post Office Box 4703
Incline Village, Nevada  89450
Telephone:   (775) 831-5603
flitequack@aol.com

**Attorney for Plaintiff**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY J. EZRA, an individual, | Case No.: |
| Plaintiff, | |
| vs. | **PLAINTIFF REQUESTS TRIAL BY JURY** |
| WEITZ & LUXENBERG, P.C., a New York professional corporation, and DOES and ROES I through XX, inclusive , | |
| Defendants. | |

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, MISREPRESENTATION AND FRAUD AND DECEIT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

COMES NOW BEVERLY J. EZRA, Plaintiff, by and through her Attorney, ALAN S. LEVIN, MD, JD, and for her causes of action, complains as to each Defendant and alleges as follows:

**I.     JURISDICTIONAL STATEMENT**

This civil action was initially filed as Beverly J. Ezra v. Weitz & Luxenberg, P.C., et al Case No 2:16-cv-00486 in the United States District Court, District of Nevada. Defendants Weitz & Luxenberg, P.C. filed 3 Motions to Dismiss based on lack of jurisdiction. The third motion was granted on July 2, 2018 with prejudice. Since the case was not dismissed on the

merits pursuant to FRCP Rule 41(b) and since jurisdiction is appropriate in New York, Plaintiff files this action in United States District Court in the Southern District of New York. It is to be noted that the United States District Court, District of Nevada DENIED Defendant W&L's Motion to Dismiss Plaintiff's claims. All parties are residents of different States of the Union and the facts and circumstances involve operations in the States of New York and Nevada, this Court has original jurisdiction under 28 U.S.C. §1331 (Federal Question) and 28 U.S.C. §1332 (Diversity) and the amount in controversy exceeds $75,000.

## II.     PARTIES

1. BEVERLY J. EZRA (hereinafter "EZRA") is a citizen of Las Vegas, Nevada.

2. WEITZ & LUXENBERG, P.C., is a New York professional corporation conducting business in Clark County, State of Nevada;

3. DOES and ROES I though XX are fictitious names, that Plaintiff is ignorant of the true names of the individuals, corporations, co-partnership and association so designated by these fictitious names, and when the true names are discovered, Plaintiff will seek leave of Court to amend this Complaint and proceedings herein to substitute the true names of said Defendants. Plaintiff believes that each of the Defendants designated herein as a DOE and ROE is responsible in some manner for the events herein referred to and negligently, carelessly, recklessly and in a manner that is willful, caused damages proximately thereby to Plaintiff as herein alleged.

## III     GENERAL ALLEGATIONS

4. That EZRA had sustained severe injuries as a result of her exposure to the toxic chemicals used in her breast implants manufactured and distributed by BMS and MEC.

5. That on or about July 7, 1997, EZRA retained Sybil Shainwald, Esq. to represent her in an action against the manufacturers of silicone gel breast implants which caused EZRA's on-going injuries.

6. That on January 9, 1998, by and through her attorney, Sybil Shainwald, EZRA filed a summons and complaint against BRISTOL-MYERS SQUIBB AND COMPANY, et al., in the U.S. District Court, Eastern District of New York, under Case No.: 1:98-cv-00118-JBW. The complaint enumerated the allegations of the injuries sustained by EZRA due to her exposure to the products manufactured by the Defendants, which were used in EZRA's breast implants.

7. That soon thereafter, the Law Office of Sybil Shainwald, referred EZRA's Case to Defendant, WEITZ & LUXENBERG, P.C., who assumed the role as EZRA's legal representatives in the above referenced case.

8. That on or about January 21, 2000, Robert J. Gordon, a member of the firm of Defendant, WEITZ & LUXENBERG, P.C., sent a letter to EZRA indicating that he had negotiated a *Tolling Agreement* with the attorneys for Defendants, BMS and MEC. It was explained to EZRA that the Tolling Agreement would ***allow her to withdraw her case without costs and without prejudice to refile at a later time***. The letter emphasized that it would be in EZRA's best interests to sign the Tolling Agreement in that it would enable WEITZ & LUXENBERG, P.C. to keep her existing local case intact and later litigate that case, and the above referenced case jointly, using additional medical information soon to be published which could then be used to her benefit. This would avoid the need for EZRA to endure excessive traveling which would be harmful to her declining health.

9. That the referenced letter further emphasized that if she signed the Tolling Agreement at that time, she could ***withdraw her case without prejudice to refile.*** EZRA was further assured that she could refile her case at any time and in any State and that the Statute of Limitations ***will not run*** against her.

10. That, based upon the reassurances of her attorneys that, if she signed the Tolling Agreement, that the case would be dismissed ***without prejudice***, on January 26, 2000 EZRA signed

the Tolling Agreement. The Tolling Agreement further specified that if she did not refile this action within one year of the date of the dismissal of the referenced case, *that the named Defendants agree to toll the applicable statute of limitations for those actions, from the date of the dismissal to a date two years after the death of EZRA*.

11. That on August 31, 2000, without the consent or knowledge of EZRA, and in direct contradiction to the agreed upon Tolling Agreement, her attorneys, WEITZ & LUXENBERG, and the named Defendants *including BMS and MEC* entered into, and filed with the Court, a Stipulated Agreement, thereby *dismissing* EZRA's case *with prejudice.*

12. That these deceitful and unauthorized acts of her attorneys and the named Defendants, denied EZRA the opportunity to reinstate her case and to pursue her entitlements for the injuries caused by the named Defendants *including BMS and MEC*.

13. That on or about October 7, 2015, the undersigned attorney agreed to reinstate Ezra's case against BMS and MEC, et al. pursuant to her rights under the Tolling Agreement signed on January 26, 2000. The undersigned then reviewed the referenced file on PACER and discovered that, *contrary to EZRA's belief, her case appeared to have been dismissed with prejudice.* This was confirmed on October 26, 2015 by a true attested copy of the Order of Dismissal from the Court. This was the first time that EZRA became aware of this fact.

### III.   FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

14. Plaintiff incorporates and realleges paragraphs 1 through 13, as though fully set forth herein.

15. On or about January 21, 2000, Robert J. Gordon, a member of the firm of Defendant, WEITZ & LUXENBERG who was representing EZRA at the time, sent her a letter indicating that he had negotiated a *Tolling Agreement* with the attorneys for Defendants, BMS and MEC. It was explained to EZRA that the Tolling Agreement would *allow her to withdraw her*

*Case without costs and without prejudice to refile at a later time*. The referenced letter further emphasized that if she signed the Tolling Agreement at that time, she could *withdraw her case without prejudice to refile* and that she could refile her case at any time after one year and that the statute of limitations *will not run* against her.

16. Based upon the reassurances of her attorneys that, if she signed, that the case would be only be dismissed *without prejudice* and that she could refile any time after the one year period, in a good faith belief in the terms and conditions set forth in the Agreement, on January 26, 2000 EZRA signed the written contractual Agreement.

17. However, on August 31, 2000, without the consent or knowledge of EZRA and in direct contradiction and violation of the agreed upon terms and conditions of the written Agreement, her attorneys, WEITZ & LUXENBERG, and the named Defendants *including BMS and MEC* entered into, and filed with the Court, a Stipulated Agreement thereby *dismissing* EZRA's case *with prejudice.*

18. EZRA first became aware that her case had been dismissed *with prejudice* on October 26, 2015 when her undersigned attorney informed her of this confirmed fact. Until this time, EZRA had reasonably believed that her former attorneys and the Defendants in Case No.: 1:98-CV-00118-JBW had fully complied with the terms and conditions of their Agreement executed on January 26, 2000.

19. Plaintiff has clearly described the existence of a Tolling Agreement, which she executed on January 31, 2000, which provided that she would be able to dismiss her case without prejudice if she chose to do so in the future, refile the case in any venue she wished. Plaintiff has asserted that the Defendant(s) later stipulated to dismiss her case with prejudice without her knowledge nor her consent thereby breaching the referenced contract. Defendants had not made any good faith efforts to perform as agreed and required, thereby breaching the Agreement.

20. It has been necessary for Plaintiff, EZRA, to incur fees and costs to bring and maintain this action and Plaintiff is entitled to reimbursement thereof.

21. Plaintiff has been damaged in the amount in excess of $25,000,000 by this Breach, the exact amount of which is to be proven at time of Trial.

### IV.   SECOND CAUSE OF ACTION
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

22. Plaintiff incorporates and realleges paragraphs 1 through 21, as though fully set forth herein.

23. On January 26, 2000, Defendants had entered into an expressed written agreement with Plaintiff, EZRA, which included the provision that by signing the referenced Tolling Agreement, she could *withdraw her case without prejudice to refile and* that she could refile her case at any time after one (1) year and that the statute of limitations *will not run* against her.

24. In good faith, Plaintiff waived her rights to pursue her case at that time and agreed to have her case dismissed *without prejudice.*

25. Plaintiff has alleged the existence of a Tolling Agreement and that Defendant(s) owed her a duty of good faith for her to pursue the terms and conditions of the Agreement and to dismiss her case without prejudice. Plaintiff has alleged that by filing the dismissal of her case with prejudice, Defendant(s) performed in a manner that was unfaithful to the Agreement and accordingly, Plaintiff's expectations of the outcome of the Agreement were denied and opportunities lost constituting a breach of the covenant of good faith and fair dealing.

26. Defendants had not made any good faith efforts to preserve her right to refile her case as expressly agreed, thereby breaching the covenants of good faith and fair dealing applicable to all agreements.

27. It has been necessary for Plaintiff to incur fees and costs to bring and maintain this action and Plaintiff is entitled to reimbursement thereof.

28. Plaintiff has been damaged in the amount in excess of $25,000,000 by this breach, the exact amount of which shall be proven at time of trial.

### V. THIRD CAUSE OF ACTION
### MISREPRESENTATION, FRAUD AND DECEIT

29. Plaintiff incorporates and realleges paragraphs 1 through 28, as though fully set forth herein.

30. As stated herein, on or about January 21, 2000, Robert J. Gordon, a member of the firm of Defendant, WEITZ & LUXENBERG, sent a letter to EZRA indicating that he had negotiated a *Tolling Agreement* with the attorneys for Defendants, BMS and MEC. It was explained to EZRA that the Tolling Agreement would *allow her to withdraw her case without costs and without prejudice to refile at a later time*. EZRA was further assured that she could refile her case at any time after one year and that the statute of limitations *will not run* against her.

31. On January 26, 2000, EZRA signed the Tolling Agreement based upon the assurances that her case would only be dismissed *without prejudice* and that the named Defendants fully agreed to toll the applicable statute of limitations for those actions, from the date of the dismissal to a date two (2) years after the death of EZRA.

32. Despite these assurances, on August 31, 2000 without the consent or knowledge of EZRA, and in direct contradiction to the agreed upon Tolling Agreement, her attorneys, WEITZ & LUXENBERG, and the named Defendants entered into, and filed with the Court, a Stipulated Agreement thereby *dismissing* EZRA's case *with prejudice.*

33. These deceitful and unauthorized acts of her attorneys and the named Defendants, denied EZRA the opportunity to reinstate her case and to pursue her entitlements for the injuries caused by the named Defendants.

34. Plaintiff has asserted that a Tolling Agreement was established between her and the

Defendant(s), which she executed on January 31, 2000. Plaintiff was assured that by executing this Agreement, she would be able to dismiss her case without prejudice if she chose to do so in the future. Plaintiff has asserted that the Defendant(s) later stipulated to dismiss her case with prejudice without her knowledge nor her consent and submitted the Order to Dismiss her case with prejudice to the Court on August 31, 2000. The Order dismissing her case with prejudice was signed by the Judge on that date without Plaintiff's knowledge or consent thereby changing the intent of the Agreement. The actions on the part of Defendant(s) constituted an intentional act of deception and misrepresentation of the terms and conditions set forth in the referenced Agreement.

35. At the time the Agreement was entered into, Defendants knew, or should have known, that they would not comply with the terms and conditions assuring that EZRA's right to refile would be preserved as set forth in the executed Tolling Agreement and, instead entered into a separate Stipulation dismissing EZRA's case *with prejudice.* Defendants, and each of them, knew that their statements to EZRA were false and were done so to deceive Plaintiff and to prevent her from further pursuing her claims for damages.

36. As a direct and proximate result of Defendants' conduct to induce Plaintiff to sign the referenced Tolling Agreement under false pretenses, Plaintiff has lost much of her savings and suffered significantly. This conduct on the part of Defendants amounted to an overt intention to defraud Plaintiff by their deceit.

37. It has been necessary for Plaintiff to incur professional fees and costs to bring and maintain this action and Plaintiff is entitled for reimbursement thereof.

38. Plaintiff has been damaged in an amount greater than $25,000,000 by Defendant's overt fraud, the exact amount of which is to be proven at time of Trial.

**VI. FOURTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

39. Plaintiff incorporates and realleges paragraphs 1 through 38, as though fully set forth herein.

40. Defendants, by fraudulently entering into an Agreement to have EZRA dismiss her case and failing to disclose material information pertaining to a separate Stipulation that they knew, or should have known, were despicable and unconscionable acts.

41. The Defendants knew or should have known that their deceitful actions would cause severe emotional distress as being outrageous conduct toward her.

42. The Defendants acted in an outrageous manner by their actions that actually caused severe emotional distress to the Plaintiff  Upon discovering that she has lost the opportunity to pursue her claims in her case which had been dismissed with prejudice, Plaintiff's emotional condition has deteriorated to the extent that she cannot perform routine tasks without becoming distracted and depressed. She cannot sleep or spend quality time with her family or friends. The act of deception on the part of Defendant(s) have caused Plaintiff to become isolated and unable to enjoy the things she had done prior to discovering that the opportunities to be reimbursed for the damage caused by her ruptured Breast Implants has been deceptively taken away from her.

43. Defendants had caused severe emotional distress to Plaintiff and Defendants acted under circumstances known to Defendants which made it substantially certain that the resulting emotional distress would follow and in which the Defendants recklessly and with utter disregard of the consequences that might follow, did attempt to mislead Plaintiff and to further cause a loss of Plaintiff's funds.

44. Defendants' actions in the setting in which they occurred, by them inducing Plaintiff to enter into an Agreement with Defendants' actual and/or apparent knowledge that EZRA would ***not be able*** to refile her case, was so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society; and

further Defendants intentionally or recklessly caused severe emotional distress to Plaintiff beyond that which any reasonable person could be expected to endure.

45. It has been necessary for Plaintiff to incur professional fees and costs to bring and maintain this action and Plaintiff is entitled for his reimbursement thereof.

46. Plaintiff has been damaged in an amount greater than $25,000,000 by the overt fraud and overall conduct, the exact amount of which is to be proven at time of trial.

**WHEREFORE**, Plaintiff prays for judgement against Defendants as follows:

FOR THE FIRST CAUSE OF ACTION

A. For a sum in excess of $10,000 for general damages.

B. For post judgement interest on award at the legal rate.

C. For fees, costs and disbursements made in order to prosecute this suit.

D. For any other judgment, the Court deems appropriate in the premises.

FOR THE SECOND CAUSE OF ACTION

E. For a sum in excess of $10,000 for general damages.

F. For a sum in excess of $10,000 as and for special damages according to proof.

G. For post judgment interest on award at the legal rate.

H. For fees, costs and disbursements made in order to prosecute this suit.

I. For any other judgment, the Court deems appropriate in the premises.

FOR THE THIRD, FOURTH, AND FIFTH CAUSES OF ACTION

J. For a sum in excess of $10,000 for general damages.

K. For a sum in excess of $10,000 as and for special damages according to proof.

L. For punitive or exemplary damages at five (5) times the damages awarded.

M. For interest at the legal rate pre and post judgement.

N. For fees, costs and disbursements made in order to prosecute this law suit.

O.  For any other judgment, the Court deems appropriate in the premises.

P.  For any other relief the Court deems appropriate in the premises.

DATED this 9th day of July, 2018.

        ALAN S. LEVIN, P.C.

BY: _____
ALAN S. LEVIN, MD, JD (Nevada Bar No. 7062)
Post Office Box 3908
Incline Village, Nevada 89450
**Attorney for Plaintiff**